UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DEVON HUNTER,

                                Plaintiff,

      vs.

                                                     9:03-CV-55

GEORGE DUNCAN,                              (J. Kahn)
Superintendent, et al.,

                                Defendants.

_____

APPEARANCES                      OF COUNSEL

DEVON HUNTER
Plaintiff pro se

ELIOT SPITZER                    KATE H. NEPVEU
Attorney General of the         Asst. Attorney General
State of New York

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this amended civil rights complaint, plaintiff alleges that he was denied both substantive and procedural due process as well as equal protection in connection with a disciplinary hearing held against him. (Dkt. No. 20).

Plaintiff seeks substantial monetary and injunctive relief.

Presently before the court is defendants' motion for summary judgment

pursuant to FED. R. CIV. P. 56. (Dkt. No. 37).  Plaintiff has responded in opposition to

the motion. (Dkt. Nos. 41, 42).  For the following reasons, this court agrees with

defendants and will recommend dismissal of the complaint.

## DISCUSSION

### 1.   Summary Judgment

Summary judgment may be granted when the moving party carries its burden of

showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson*

*v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or

inferences to be drawn from the facts must be viewed in the light most favorable to the

party opposing the summary judgment motion." *Id*.  However, when the moving  party

has met its burden, the nonmoving party must do more than "simply show that there is

some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  At that point, the nonmoving party must

move forward with specific facts showing that there is a genuine issue for trial. *Id. See*

*also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir.

2002)(citations omitted).

### 2.   Facts

In plaintiff's amended complaint, he states that on December 11, 2002, he was

in a group of approximately thirty nine inmates at Great Meadow Correctional Facility

2

who were being escorted to the mess hall. Amended Complaint (AC) at 6.  Plaintiff states that defendant Corrections Officer (CO) Bardon approached the group and asked a general question regarding the group's housing location. *Id.*  When no one responded, CO Bardon asked the question directly to plaintiff. *Id.*  Rather than answering the question, plaintiff states that he "referred" CO Bardon to the other corrections officer who was present and who was in charge of escorting the group. *Id.*

Plaintiff claims that in response to this "polite reference", defendant Ripley and defendant Bardon "conspired" to charge plaintiff with misbehavior. *Id.*  Plaintiff states that he was ordered into punitive confinement and served with a misbehavior report on December 12, 2002, the following day.  Plaintiff states that defendant Shovan determined that the offense was of a Tier II level of severity. *Id.* at 6-7.  Plaintiff claims that the determination of severity was made without "a uniform scheme regulating Shovan's choice and review." *Id.* at 7.

Plaintiff's disciplinary hearing was held on December 14, 2002, with defendant DiBiase as the presiding hearing officer. *Id.*  Plaintiff seems to claim that in accordance with an "unwritten" policy, defendant DiBiase was "indifferent" to fundamental fairness and found plaintiff guilty of the misbehavior.  Plaintiff was sentenced to punitive confinement together with a loss of privileges. *Id.*  Plaintiff states that he appealed the result to defendant David Carpenter, the Deputy Superintendent for Programs at Great Meadow, who affirmed the hearing officer's

3

disposition. *Id.*  Plaintiff claims that defendants Duncan and Carpenter "erred" in the "management" of defendants Shovan, DiBiase, Ripley, and Bardon. *Id.* at 8.  Plaintiff also claims that defendants Goord and Selsky failed to adequately train, supervise, and manage the conduct of the other defendants, making Goord and Selsky "personally responsible" for the alleged violations. *Id.*

Plaintiff has nine numbered paragraphs of claims under the section of his complaint entitled "Statement of Claims."  Plaintiff states that the defendants "retaliated" against plaintiff for the exercise of his First Amendment rights. Statement of Claims ¶ 1.  Plaintiff also alleges that he was subjected to an "unreasonable seizure" in violation of the Fourth Amendment. *Id.* ¶¶ 2, 7.  Plaintiff claims that the "arbitrary and disparate treatment" to which he was subjected caused a violation of his rights to Due Process and Equal Protection. *Id.* ¶¶ 3, 5, 6, 8.   Plaintiff also alleges procedural due process violations (¶ 4) and Eighth Amendment violations (¶ 9).

**3.   Retaliation**

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)).  The court must keep in mind that claims of retaliation

4

are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).[1]

The court in *Dawes* stated that in order to survive **summary dismissal**, the plaintiff's "non-conclusory" allegations must establish

> (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.

239 F.3d at 492 (citations omitted).  Although defendant argues that the retaliatory action must also have chilled plaintiff's exercise of his First Amendment rights, subsequent Second Circuit cases have held that, in a prison context, all that is required is that the adverse conduct by defendant would have deterred a similarly situated individual of ordinary firmness from exercising his First Amendment rights. *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).  In *Gill*, the court held that this objective test applied, even where a particular plaintiff was ***not subjectively deterred*** and continued to file grievances and lawsuits. *Id.*

Finally, even if plaintiff can show that plaintiff's protected conduct was a

---

[1] The court would note that *Dawes* did not create a "heightened pleading standard", and to the extent that it did create such a standard, the Second Circuit held that *Dawes* was inconsistent with *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). *See Phelps v. Capnolas*, 308 F.3d 180, 187 (2d Cir. 2002).  The decision in *Phelps* resulted from a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), and the court was considering only the face of the complaint.  This case comes before the court upon a motion for summary judgment, thus, this case is distinguishable from a situation in which only the complaint is being examined.

motivating factor in the defendant's adverse action, defendant may evade liability by showing that plaintiff would have been disciplined even in the absence of the protected conduct. *Bennett*, 343 F.3d at 137 (citing *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

In this case, although plaintiff alleges that defendants Bardon and Ripley issued the misbehavior report in retaliation for plaintiff's exercise of the constitutional right to freedom of speech, plaintiff has not shown that his speech was constitutionally protected. Plaintiff does not claim that these defendants had any other contacts with plaintiff prior to this incident, thus, it appears that plaintiff is claiming a constitutional violation because defendants gave him a misbehavior report for his refusal to speak, and then for his comment that defendant Bardon should address his questions to the corrections officer who was escorting the company. Plaintiff is attempting to claim that the retaliation was for the conduct that formed the basis for the misbehavior report in the first place.

Defendant Bardon has submitted an affidavit outlining the defendants' version of the incident. Bardon Aff. Defendant Bardon states that on December 11, 2002, defendant Bardon was stationed at the school gate with defendant Ripley. Bardon Aff. ¶ 2. When companies of inmates are escorted to the mess hall, they are stopped at the school gate to wait for other companies to clear the hallway to the mess hall. *Id.* ¶ 3. The inmates wait in pairs, and the escorting officer is at the back of the company. *Id.*

6

¶¶ 4, 5.  Defendant Bardon further states that on December 11, 2002, defendant Ripley

told Bardon to direct certain inmates from various companies to Ripley, and this

action involved the identification of the individual companies. *Id.* ¶ 7.

When plaintiff's company stopped at the gate, defendant Bardon asked plaintiff

to identify his company because plaintiff was one of the two inmates at the front of the

line. *Id.* ¶ 8.  Initially, plaintiff did not answer, so defendant Bardon asked again. *Id.* ¶

9.  Defendant Bardon ordered plaintiff to respond, but again, plaintiff failed to answer.

*Id.* ¶ 10.  Finally, after defendant Bardon ordered plaintiff to answer a third time,

plaintiff responded that if Bardon wanted that information, he should talk to the

company officer, "not [plaintiff]." *Id.* ¶ 11.  Defendant Bardon characterized plaintiff's

response as "arrogant" and "loud." *Id.*  The inmate standing next to plaintiff ultimately

answered defendant Bardon's question. *Id.* ¶ 12.  Defendant Ripley wrote a

misbehavior report against plaintiff, charging him with refusing to obey a direct order.

*Id.* ¶ 14.

There is ***no dispute*** that plaintiff never answered defendant Bardon's question,

and instead told Bardon to go ask the officer who was escorting the company.

Plaintiff admits this in the complaint.  The only dispute appears to be the tone of

plaintiff's voice when he "referred" defendant Bardon to the escorting officer.

Plaintiff seems to be attempting to claim that this behavior constituted "protected

speech" and thus, defendant's actions in writing the misbehavior report rose to the

level of retaliation for the exercise of plaintiff's constitutional right to freedom of speech.

In his response to the motion for summary judgment, plaintiff now claims that defendant Bardon simply asked the company a general question, and no order was ever given to plaintiff directly. (Dkt. No. 41 at 2). This is contradictory to plaintiff's amended complaint which specifically states that "Bardon *selected and directed his inquisition to inmate Hunter*." AC at 6 (emphasis added). Regardless of the characterization of defendant Bardon's inquiry as a question or an order, it is clear that plaintiff failed to answer. Although this dispute appears to be with whether there was an order or not that plaintiff failed to obey, it does *not* show that Bardon was retaliating against plaintiff for anything. In his memorandum of law, plaintiff specifically states that the "retaliation" was for "plaintiff informing Bardon to ask the company officer for the requested information." (Dkt. No. 41, Plaintiff's Memorandum of Law at 2).

Ignoring a question, and then telling the officer to ask someone else is not protected activity. Although inmates retain the right to complain about prison practices and conditions, this right is not unlimited, and inmates retain only those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives. *Gonzalez v. Nacarato*, 363 F. Supp. 2d 486, 493 (E.D.N.Y. 2005)(citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433

U.S. 119 (1977)).  Additionally, ignoring a question and then responding in an inappropriate manner does not constitute "complaining" about prison practices and conditions.

As stated by defendants, for security purposes, inmates must answer appropriate questions posed by corrections officers and may not ignore orders. Bardon Aff. ¶¶ 18-20. To allow inmates to ignore questions or orders by corrections officers would seriously undermine the ability of the officers to manage the inmate population.  The **material** facts of this incident are **undisputed**.  Whether plaintiff interpreted Bardon's question or order differently than defendants Bardon and Ripley did does not change the situation.  Whether defendant Bardon interpreted plaintiff's tone differently than plaintiff intended is also not material, and whether plaintiff was disobeying a direct order or merely ignoring a question was a matter for the disciplinary hearing.[2]  Thus, plaintiff's conduct was not "protected speech" and the issuance of a misbehavior report based on that conduct was not "retaliation" for the exercise of constitutionally protected conduct.

Even if the court were to find that plaintiff's speech were "protected", the court would still find that the restriction placed on that speech was reasonable.  As stated

---

[2] A review of the exhibits submitted with the summary judgment motion shows that plaintiff's argument with this incident was that he did not believe that he was given a direct order to answer Bardon's question and thus, believed that he should not have been found guilty of refusing a direct order. Defendants' Ex. B (transcript of hearing) and Ex. C (Plaintiff's administrative appeal papers).

above, inmates cannot simply ignore questions posed or orders given by corrections officers.  Whether the ***inmate*** believes that the officer should have asked someone else, again, is not material to the issue.  Issuing a misbehavior report for behavior that the officer believed was in violation of a facility rule or regulation cannot be viewed as retaliation for the exercise of a constitutional right.  Thus, whether the court finds that plaintiff's conduct was not protected, or if protected, that the defendants' actions were a reasonable limitation of that protected activity, plaintiff's First Amendment retaliation claim must be dismissed.

Later in plaintiff's memorandum, he states that the defendants retaliated against him for exercising his constitutional right to seek redress in federal court.  Although if true, this allegation would state a claim,[3] there is absolutely ***no factual basis*** set forth for plaintiff's conclusory statement, and it is clear that until plaintiff's memorandum of law, the "retaliation" claimed was ***not for filing lawsuits***, but rather for telling Bardon to go ask the company officer for information.  There is no claim that plaintiff had filed a prior lawsuit or that any of the defendants were involved in or knew about any federal lawsuit that plaintiff might have filed.  Thus, there would be no nexus between the adverse action and any "protected activity."  As stated above, claims of retaliation cannot be supported by wholly conclusory allegations. *Bennett*, 343 F.3d at

---

[3] *See Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988)(inmates have a constitutional right of access to both administrative and judicial fora for the purpose of seeking redress of grievances).

137.

4.    **Procedural Due Process**

In order to begin a due process analysis, the court must determine, *inter alia*, that plaintiff had a protected liberty interest in remaining free from the confinement that he challenges. *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996).  In *Sandin*, the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484.

*Sandin* rejected the notion that any action taken by prison personnel for punitive reasons encroaches on a liberty interest.  *Id*. at 484.  The court referred to as "dicta" statements in other cases implying that solitary confinement automatically triggers due process protections.  *Id*. at 485 (citing *Wolff*, 418 U.S. at 571 n.19; *Baxter v. Palmigiano*, 425 U.S. 308, 323 (1976)).  Applying this standard to the facts in *Sandin*, the Court determined that Conner's discipline in segregated confinement for 30 days did ***not*** present the type of atypical, significant deprivation in which the state might create a liberty interest.  *Id*.

In determining what constituted "atypical and significant" deprivations, the

*Sandin* court compared disciplinary segregation with other forms of segregation; compared the plaintiff's confinement with conditions in general population to see whether the inmate had suffered a major disruption in his environment; and examined whether the **length** of the inmate's sentence was affected. *Id*. at 486-87.

The Second Circuit has *indicated* that whether a deprivation is atypical and significant involves fact finding. *See Frasier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)("[t]he extensive fact-finding of the district court permits us to measure Frasier's SHU claim by the standard of *Sandin*); *Samuels v. Mockry*, 77 F.3d 34, 38 (2d Cir. 1996)(assessment as to whether inmate had a protected liberty interest may require fact finding).

The Second Circuit has discussed the duration element of the *Sandin* analysis. *Colon v. Howard*, 215 F.3d 227 (2d Cir. 2000).  In *Colon*, the court discussed whether it was appropriate to have a "bright line" rule regarding the maximum length of confinement in the Special Housing Unit (SHU) before a liberty interest might be created. *Id.*  The court concluded that 305 days in SHU would meet the standard. *Id.* at 231.  Although Judge Newman believed that the court should articulate a bright line rule, holding that any SHU confinement less than 180 days would not create a liberty interest, the panel disagreed. *Id.* at 234.  The court also noted that the longest confinement in SHU that did **not** meet the atypical requirement was **101 days**. *Id.*  at 231 (citing *Sealey v. Giltner*, 197 F.3d 578, 589-90(2d Cir. 1999)).  Although the

court made clear in a footnote that it did not exclude the possibility that confinements of less than 101 days could not be shown to be atypical "on a record more fully developed than the one in *Sealey*",[4] it was clear from the decision that a ***30 day confinement*** would ***not*** suffice to create a liberty interest.

In this case, plaintiff was charged with three violations, Interference with an Employee; Harassment; and Refusing a Direct Order, but was only found guilty of refusing the direct order. Defendants' Ex. A at 1.  Plaintiff was found guilty of the received only a fifteen day "keeplock" confinement, together with a loss of privileges for the same period. *Id.*  Keeplock is confinement to an inmate's own cell. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).

Additionally, plaintiff was subjected only to a ***Tier II*** hearing, in which the maximum possible penalty he could receive was 30 days of segregated housing or keeplock.[5]  *See* N.Y. Comp. Codes R. & Reg. Tit. 7 § 254.7(a)(iii) and (vi).  There is no possibility in a Tier II hearing of a loss or even a recommended loss of good time, thus the length of plaintiff's confinement was not and could not have been affected. In keeplock, the inmate's environment is less disturbed or atypical that in a segregated housing in a separate part of the facility.  Plaintiff has not indicated any way that this

---

[4] *Colon*, 215 F.3d at 232 n.5.

[5] The court is well aware that it is the ***actual*** penalty imposed, not the ***potential*** penalty, that is relevant for the *Sandin* analysis. *Scott v. Albury*, 138 F.3d 474 (2d Cir. 1998).  The court is mentioning the potential penalty merely to indicate that plaintiff could not have been sentenced to longer confinement in any event as the result of a Tier II hearing.

fifteen day confinement to his own cell was in any way atypical or significant, and there was **no liberty interest** in remaining free from the confinement in which he was placed. Because there was no liberty interest involved, any procedural due process claim relating to the disciplinary hearing may be dismissed.

## 5.   <u>Substantive Due Process</u>

The concept of substantive due process is the protection from arbitrarily and oppressively exercised government power. *Daniels v. Williams*, 474 U.S. 327, 331 (1986). In order for official action to violate substantive due process, it must "shock the conscience" in a constitutional sense. *City of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). Based on the court's findings above, there is nothing in plaintiff's complaint that would rise to the level of "conscious shocking" behavior by any of the defendants.

The issuance of the misbehavior report, even assuming plaintiff's version of the facts, was reasonable. A Tier II level of hearing was chosen, and a Tier II hearing cannot result in any confinement of longer than thirty days. The plaintiff's sentence of fifteen days was well below the maximum provided for by Tier II regulations, and he was sentenced to confinement in **his own cell**. Thus, neither the defendants' who were responsible for the misbehavior report, nor the defendants responsible for the hearing and appeal acted arbitrarily and in violation of substantive due process. This claim may also be dismissed.

14

**6.     Eighth Amendment and Fourth Amendment**

Plaintiff also seems to argue that his confinement violated his right to be free from cruel and unusual punishment and his right to be free from unreasonable seizures.[6]  In order to show that prison conditions violated the Eighth Amendment, and inmate must show "extreme deprivations" because "routine discomfort" is part of the penalty that an inmate pays for his offenses against society. *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000)(citations omitted).

In this case, even assuming that plaintiff's version of the facts is true, there is no Eighth Amendment violation stated.  Plaintiff must establish a serious deprivation of a "basic human need." *See Williams v. Goord*, 142 F. Supp. 2d 416, 425 (S.D.N.Y. 2001)(citations omitted).  Fifteen days keeplock in one's own cell, without more, can hardly be interpreted as an "extreme deprivation," and plaintiff has not alleged a "serious deprivation of a basic human need."   Thus, plaintiff's Eighth Amendment claim must fail.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend IV.  It has been clearly held, with respect to ***searches***, that an inmate does not have a reasonable expectation of privacy in his jail cell. *See Willis v. Artuz*, 301 F.3d 65, 66-67 (2d Cir. 2002)(citing *Hudson v. Palmer*, 468 U.S. 517

---

[6] The Fourth and Eighth Amendments are applicable to the States through the Fourteenth Amendment. *See Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)(Fourth Amendment); *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991)(Eighth Amendment).

(1984)).  While it is true that inmates do not shed all constitutional rights at the facility door, the Second Circuit has held that the concept of "unreasonable" search or seizure is an "amorphous standard whose meaning varies with the context in which a search occurs and the circumstances of the search ... ." *N.G. ex rel. S.C. v. Connecticut*, 382 F.3d 225, 230 (2d Cir. 2004).

In *Miller v. Herbert*, the court held that although most of the cases analyzing the Fourth Amendment in prison dealt with "searches", there was no "apparent reason" why the seizure provision would not be implicated as well. *Miller v. Herbert*, 95-CV-360, 1997 U.S. Dist. LEXIS 15144, *7-8 (W.D.N.Y. Sept. 24, 1997).  Citing a Northern District of Illinois case, the court in *Miller* stated that it was "fairly" arguable that the concept of being free from unreasonable seizures would include the entitlement that an inmate not be subjected to a further "major" limitation on his liberty for "no penological purpose at all." *Id.* (citing *Leslie v. Doyle*, 868 F. Supp. 1039, 1044 (N.D. Ill. 1994).

An individual who is already incarcerated has already suffered a "seizure" by the government.  Even assuming that the Fourth Amendment, rather than only the Fourteenth Amendment Due Process clause would also protect an inmate from a further restriction on his liberty, this court finds that in this case, plaintiff does not even approach the concept of "unreasonable."  As stated above, plaintiff admitted that he failed to answer defendant Bardon the first time, and whether it took three more

16

requests as defendant Bardon states or one more request as plaintiff states, ultimately, plaintiff concedes that he never answered the question and instead, "referred" Bardon to the company escort officer.  This court has found that the issuance of the misbehavior report on this basis was reasonable, and not "in retaliation" for plaintiff's exercise of his right to speak.  After the hearing, plaintiff was confined to **his own cell** for fifteen days, neither a Due Process, nor an Eighth Amendment violation.  Thus, even assuming that the confinement can be interpreted as a "seizure" under the Fourth Amendment, it was reasonable.  There is no way that this court can find based on the undisputed facts, either that the further limitation was "major" or that it was "without penological purpose."  Thus, any Fourth Amendment claim may be dismissed.

### 7.   <u>Equal Protection</u>

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly situated people alike. *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005).  Generally, the Equal Protection Clause is used to bring claims based upon plaintiff being a member of a protected class. *Id.*  However, where plaintiff does not allege class membership, he may still prevail on a "class of one" equal protection claim. *Id.*  This type of equal protection claim involves alleging that the plaintiff has been treated differently than others who are similarly situated, and that the different treatment is without rational basis. *Id.* (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)(per curiam).  In order to succeed on a "class of

17

one" case, the plaintiff must show that the level of similarity between plaintiff and the persons with whom he compares himself is "extremely high." *Id.* (citation omitted).

In this case, plaintiff does **not** allege membership in a protected class, and he does **not** even allege how any other person similarly situated to plaintiff was treated differently than he was.  Thus, plaintiff's equal protection claims must be dismissed.

## 8.   **Personal Involvement**

This court has found that plaintiff's claims have no merit and may be dismissed, thus, the court does not have to discuss the personal involvement of supervisory defendants Duncan, Selsky, and Goord. It is well-settled that personal involvement is a prerequisite to the assessment of damages in civil rights actions. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.), *cert. denied*, 434 U.S. 1087 (1978).  The doctrine of respondeat superior is inapplicable to section 1983 claims.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973).

In this case, although plaintiff seems to claim that somehow these defendants were personally involved, there are no factual allegations to support this allegation. Glenn Goord was named as the Commissioner of the Department of Correctional Services.  Defendant Goord was in Albany and did not work at plaintiff's correctional facility.  The appeal of plaintiff's disciplinary hearing was decided by defendant Carpenter, and there is no indication that either defendant Goord or defendant Selsky,

who is the Director of Special Housing and Inmate Discipline even knew about plaintiff's case.

Plaintiff states that Selsky is "responsible" for training hearing officers, and the court does note that personal responsibility may be established if the supervisor was grossly negligent in managing the subordinates who caused the violation. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986). However, plaintiff's conclusory allegation that Selsky trains hearing officers is insufficient to show personal involvement. Although defendant Duncan was the Superintendent of Great Meadow, there is no indication in plaintiff's complaint or in any of the disciplinary hearing documents that Duncan was in any way involved or even knew about plaintiff's situation. Thus, this court finds that an additional basis for the dismissal of the complaint as against Duncan, Selsky, and Goord is their lack of personal involvement.

## 9.   <u>Service of Process</u>

The court would also point out that defendant Shovan was never served in this action. The only claim made against defendant Shovan was that he reviewed the misbehavior report and selected Tier II as the appropriate severity for the disciplinary hearing.

The Federal Rules require that a defendant be served within 120 days of filing the complaint. FED. R. CIV. P. 4(m). The failure to serve a defendant within 120 days of filing the complaint may be a ground for dismissal of the complaint. *Id.* It is true

that a pro se, in forma pauperis plaintiff may rely upon the Marshal to properly serve the summons and complaint. *Romandette v. Weetabix*, 807 F.2d 309, 311 (2d Cir. 1986).

In this case, it appears that defendant Shovan was not served because he had retired from State service at the time that the Marshal attempted to serve the defendant at the correctional facility. (Dkt. No. 25).  No further attempts were made to serve this defendant.  However, since this court is recommending dismissal of the entire complaint as without merit, the court need not determine whether and how to serve defendant Shovan, but instead will recommend dismissal as to him both for failure to serve and based on the merits of the complaint.

## 10.   Eleventh Amendment

Finally, the court notes that the amended complaint states that plaintiff is suing defendants in their individual and ***official capacities***.  It is now well-settled that the state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995)(citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)).  This rule extends to agencies of the state such as DOCS and to actions against state officers in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989); *Yorktown Medical Laboratory v. Perales*, 984 F.2d 84, 87 (2d Cir. 1991).  The rule applies whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3.  Thus, to the

20

extent that the complaint seeks ***damages*** against defendants in their "official

capacities", the complaint may also be dismissed on Eleventh Amendment grounds.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion for summary judgment (Dkt. No.

37) be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY AS TO**

**ALL DEFENDANTS.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten

days within which to file written objections to the foregoing report.  Such objections

shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS**

**REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated: July 25, 2005

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge